IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST PIPE COMPANY,

        Plaintiff,

v.

RLI INSURANCE COMPANY,

        Defendant.

---

EMPLOYERS INSURANCE OF WAUSAU,

        Counter Claimant,

v.

NORTHWEST PIPE COMPANY,

        Counter Defendant

---

CV 09-1126-PK

FINDINGS AND RECOMMENDATION

RLI INSURANCE COMPANY,

        Third-Party Plaintiff,

v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, ACE FIRE
UNDERWRITERS INSURANCE
COMPANY,

        Third-Party Defendants.

PAPAK, Magistrate Judge:

        Northwest Pipe Company ("Northwest Pipe") filed this declaratory judgment and breach of contract action in Multnomah County Circuit Court against RLI Insurance Company ("RLI") and Employers Insurance of Wausau ("Wausau") on July 14, 2009, seeking this court's declarations that Wausau and RLI are each obligated to undertake Northwest Pipe's defense in connection with superfund-related claims brought against it by the Environmental Protection Agency (the "EPA") and the Oregon Department of Environmental Quality (the "DEQ"), as well as damages for costs incurred in investigating and defending those claims. Wausau removed the action to this court on September 22, 2009, on diversity grounds. On September 29, 2009, Wausau filed a counterclaim against Northwest Pipe, seeking this court's declaration that Wausau has no duty to defend or obligation to indemnify Northwest Pipe in connection with the insurance policy between Wausau and Northwest Pipe that is the subject of Northwest Pipe's claims against Wausau, as well as this court's declaration that Wausau has no duty to defend and no obligation to indemnify Northwest Pipe in connection with two other insurance policies between Wausau

Page 2 - FINDINGS AND RECOMMENDATION

and Northwest Pipe, as to which Wausau is currently contributing to Northwest Pipe's defense.

On August 12, 2010, Judge Brown granted partial summary judgment in favor of Wasau, dismissing all of Northwest Pipe's claims against it, and granting judgment in Wasau's favor as to its counterclaim for declaratory judgment that Wausau has no duty to defend or obligation to indemnify Northwest Pipe in connection with the insurance policy between Wausau and Northwest Pipe that was the subject of Northwest Pipe's claims against Wausau. Judge Brown additionally granted partial summary judgment in favor of Northwest Pipe as to RLI's duty to defend only.

Effective March 18, 2011, Wausau amended its pleading to state cross-claims against RLI, specifically for this court's declaration of Wausau's and RLI's "respective rights and obligations, if any, under each of their respective insurance policies issued to Northwest Pipe," including a declaration that "in the event that Northwest Pipe can establish the existence, terms, and conditions of any contract of insurance issued by Wausau, and in the event coverage is found to exist under any policy so established as issued by Wausau, that such coverage should be apportioned among Northwest Pipe and all defendants in a fair and equitable manner," and for equitable contribution of RLI's proportionate share of moneys already expended by Northwest Pipe's insurers other than RLI in connection with Northwest Pipe's defense. Effective August 11, 2011, RLI amended its pleading to state third-party claims against ACE Property and Casualty Insurance Company ("APCIC") and ACE Fire Underwriters Insurance Company ("AFUIC" and, collectively with APCIC, the "ACE defendants") for contribution of the ACE defendants' proportional share of Northwest Pipe's defense costs and to state a counterclaim for this court's declaration of all parties' respective rights under the parties' insurance contracts, including the

Page 3 - FINDINGS AND RECOMMENDATION

ACE defendants.

Now before the court are Wausau's motion (#120) for partial summary judgment as to its cross-claim against RLI for equitable contribution, the ACE defendants' joinder (#125) in Wausau's pending dispositive motion, and Northwest Pipe's joinder (#132) in Wausau's pending dispositive motion. I have considered the motions, the parties' briefs, oral argument on behalf of the parties, and all of the evidence of record. For the reasons set forth below, the three motions should be granted as discussed below.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## BACKGROUND[1]

### I.   Parties

Northwest Pipe Company (formerly known as Northwest Pipe & Casing Company) is an Oregon corporation with its principal place of business in Vancouver, Washington. At all material times beginning February 1, 1982, Northwest Pipe owned and operated a facility (the "Portland Facility") near the Willamette River in North Portland, located at 12005 N. Burgard Road.

Each of the ACE defendants is a Pennsylvania corporation with its principal place of business in Pennsylvania. Each ACE defendant is in the business of providing liability insurance. APCIC issued Northwest Pipe a liability insurance policy covering the period from June 14, 1980, to June 14, 1982. AFUIC issued Northwest Pipe a liability insurance policy covering the period from June 14, 1982, through June 14, 1983. Each of the ACE defendants' policies has a coverage limit of $100,000.

Employers Insurance of Wausau is a Wisconsin corporation with its principal place of business in Wisconsin. Wausau is in the business of providing liability insurance. Wausau issued three insurance policies to Northwest Pipe, each with a $500,000 coverage limit, one covering the period from July 8, 1983, through July 8, 1984, one covering the period from July 8, 1984, through July 8, 1985, and one covering the period from July 8, 1985, through July 8, 1986. Wausau has undertaken to defend Northwest Pipe against the superfund claims in connection with the policies covering the period from July 8, 1983, through July 8, 1984, and the period

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Page 5 - FINDINGS AND RECOMMENDATION

from July 8, 1984, through July 8, 1985, but has not undertaken Northwest Pipe's defense in connection with the policy covering the period from July 8, 1985, through July 8, 1986.

RLI Insurance Company ("RLI") is an Illinois corporation with its principal place of business in Illinois. RLI is in the business of providing liability insurance. RLI issued Northwest Pipe a so-called "umbrella" liability insurance policy with a $1,000,000 coverage limit, covering the period from July 8, 1985, through February 19, 1986.[2]

## II. Policies

### A. ACE Defendants' Policies

The ACE defendants' policies, covering the period from June 14, 1980, through June 14, 1983, contain a coverage exclusion for certain specified environmental damage, but the exclusion is expressly inapplicable to "sudden and accidental" discharge, dispersal, release, or escape of pollutants. The ACE defendants have undertaken to defend the actions against Northwest Pipe under both of their policies subject to a reservation of rights, and are currently contributing to Northwest Pipe's defense in the Superfund action.

### B. Wausau's Policies

Wausau's policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, contain a coverage exclusion for any damage caused by pollution *other* than "sudden and accidental" pollution. That is, the policies cover damage caused by sudden and accidental release of pollutants, and do not cover damage caused by any other form of release of pollutants. Wausau has undertaken to defend the actions against

---

[2] The policy was originally issued for a period of one year, but was canceled effective February 19, 1986.

Page 6 - FINDINGS AND RECOMMENDATION

Northwest Pipe in connection with each of these two policies subject to a reservation of rights, and is currently defending Northwest Pipe in those actions under these policies.

By contrast, Wausau's policy covering the period from July 8, 1985, through July 8, 1986 (Wausau's "1985-1986 policy"), as amended, contains a so-called "absolute" pollution exclusion, excluding from coverage all damage caused by pollutants, applicable as follows:

(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

  (a) at or from premises owned, rented or occupied by the named insured;

  (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

  (d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

    (i) if the pollutants are brought on or to the site or location in connection with such operations; or

    (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The absolute pollution exclusion was added to the 1985-1986 policy by Endorsement No. 8 on August 6, 1985, approximately one month into the effective period of the policy. By its express

terms, Endorsement No. 8 was intended to apply retroactively to the entire effective period of the policy. Wausau has not contributed to Northwest Pipe's defense under the 1985-1986 policy and, under Judge Brown's order of August 12, 2010, is not required to.

### C.     RLI's Policy

RLI's policy, covering the period from July 8, 1985, through February 19, 1986 (the "RLI policy"), provides insurance coverage in the event of property damage, among other losses. The policy contains a provision (the "underlying-insurance provision") expressly providing that RLI must undertake Northwest Pipe's defense in the event of a covered loss as to which no coverage exists under any insurance policy "underlying" the RLI policy:

> With respect to any occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance hereof or any other underlying insurance collectible by the Assured, but covered by the terms and conditions of this policy except for the amount of Retained Limit specified in the Declarations, the Company shall
>
> (a)     defend any suit against the Assured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . .

The Schedule of Underlying Insurance specifically lists Wausau's 1985-1986 policy as an underlying policy.

The RLI policy contains a further provision (the "other-insurance provision") providing that coverage under the RLI policy does not arise until coverage under all other applicable policies is exhausted, other than coverage under policies expressly excess to the RLI policy:

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

Page 8 - FINDINGS AND RECOMMENDATION

As of the present date, RLI has not contributed to Northwest Pipe's defense in the Superfund actions.[3]

### III. History of the Coverage Dispute

On November 19, 1999, the Oregon Department of Environmental Quality sent Northwest Pipe a letter indicating that the Portland Facility was a "high priority" location for assessment and testing in connection with the investigation of the significant contamination of the Portland Harbor superfund site. On December 8, 2000, the Environmental Protection Agency sent Northwest Pipe a letter indicating that Northwest Pipe had been identified as a potentially responsible party in connection with the contamination of the Portland Harbor superfund site. As a potentially responsible party, Northwest Pipe was required to conduct an investigation of the contamination at the Portland Facility and to defend itself against EPA and DEQ claims against it.

On January 16, 2002, Northwest Pipe tendered the defense of the EPA and DEQ claims to the ACE defendants, Wausau and RLI. As noted above, the ACE defendants undertook Northwest Pipe's defense in connection with both of its policies, and Wausau undertook Northwest Pipe's defense in connection with two of its three policies. However, Wausau declined to defend Northwest Pipe in connection with the 1985-1986 policy on the ground that coverage was excluded under the absolute pollution exclusion of that policy, and RLI declined to undertake Northwest Pipe's defense on the ground that its duty to defend was not triggered until Northwest Pipe had exhausted all other applicable insurance coverage.

---

[3] As RLI concedes, it has been the law of the case since August 12, 2010, that RLI owes Northwest Pipe a duty to defend.

Page 9 - FINDINGS AND RECOMMENDATION

On August 12, 2010, Judge Brown declared that Wausau has no duty to defend or indemnify Northwest pipe in connection with the 1985-1986 policy. Judge Brown further declared that RLI owes Northwest Pipe a duty to defend under its purported umbrella policy.

According to the defendants' submissions, as of September 23, 2011, the ACE defendants had contributed a total of $2,072,271.15 and Wausau had contributed $1,753.546.57 toward Northwest Pipe's defense costs of $3,825,817.72. As noted above, RLI has not yet made any contribution toward Northwest Pipe's defense costs.[4]

## ANALYSIS

By and through the cross-claim for equitable contribution that is the subject of Wausau's motion, Wausau seeks an order specifying the share of Northwest Pipe's defense costs properly allocable to each of Northwest Pipe's insurers, and compelling RLI to contribute to Northwest Pipe's defense in the appropriate amount. The ACE defendants and plaintiff Northwest Pipe each join in part in Wausau's motion, although each takes issue with some details of Wausauu's analysis of the factors bearing upon the requested allocation. RLI, for its part, argues that unresolved factual questions preclude entry of judgment as to the portion of Northwest Pipe's defense costs allocable to it in any specific dollar amount. To the extent the court may enter judgment as to the proportion of Northwest Pipe's defense costs allocable to defendants that is properly allocable to RLI, RLI, like the ACE defendants and Northwest Pipe, takes issue with some details of Wausau's analysis of the factors bearing upon the requested allocation.

---

[4] Northwest Pipe, for its part, disputes that its compensable defense costs as of September 23, 2011, totaled only $3,825,817.72, and asserts, without specificity, that both Wausau and the ACE defendants made certain deductions from their respective contributions, and that Northwest Pipe has in consequence been obliged to shoulder the (unspecified) difference between their contributions and its actual reasonably incurred defense costs.

Page 10 - FINDINGS AND RECOMMENDATION

It is the law of this case that each defendant is under a duty to contribute to Northwest Pipe's defense. Wausau and the ACE defendants have each made contributions toward Northwest Pipe's defense, and RLI has not. Under Oregon law:

> An insurer that has paid an environmental claim may seek contribution from any other insurer that is liable or potentially liable. If a court determines that the apportionment of recoverable costs between insurers is appropriate, the court shall allocate the covered damages between the insurers before the court, based on the following factors:
>
> (a) The total period of time that each solvent insurer issued a general liability insurance policy to the insured applicable to the environmental claim;
>
> (b) The policy limits, including any exclusions to coverage, of each of the general liability insurance policies that provide coverage or payment for the environmental claim for which the insured is liable or potentially liable;
>
> (c) The policy that provides the most appropriate type of coverage for the type of environmental claim; and
>
> (d) If the insured is an uninsured for any part of the time period included in the environmental claim, the insured shall be considered an insurer for purposes of allocation.

Or. Rev. Stat. 465.480(4). Section 480 further provides that:

> If an insured is an uninsured for any part of the time period included in the environmental claim, an insurer who otherwise has an obligation to pay defense costs may deny that portion of defense costs that would be allocated to the insured under subsection (4) of this section.

Or. Rev. Stat. 465.480(5).

It appears that the Oregon courts have not opined as to how the Section 480(4) factors should be applied to determine the shares properly allocable to consecutive insurers. Courts addressing this issue outside of Oregon have relied upon multiple different methods of allocation, including pro rata allocation based on time on the risk, *see Consol. Edison Co. of N.Y. v. Allstate*

Page 11 - FINDINGS AND RECOMMENDATION

*Ins. Co.*, 98 N.Y.2d 208, 224-225 (N.Y. 2002), pro rata allocation based on some combinatoric of time on the risk and policy limits, *see Owens-Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 475-478 (N.J. 1994), equal allocation among insurers under a duty to defend, *see Argonaut Ins. Cos. v. Medical Liability Mut. Ins. Co.*, 760 F. Supp. 1078, 1086 (S.D.N.Y. 1991), pro rata allocation based on total premiums paid by the insured to each insurer, *see Ins. Co. of Texas v. Employers Liability Assurance Corp.*, 163 F. Supp. 143 (S.D. Cal. 1958), allocation across years proportional to the damages suffered in each year, *see Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1392-1393 (S.D.N.Y. 1988), and equal allocation across all insurers under a duty to defend with the proviso that, when a policy with lower coverage limits is exhausted, the share previously allocated to it is shifted to the insurer with the highest coverage limit, *see United States Dist. Court v. Allendale Mut. Ins. Co.*, 95 Wn.2d 464, 465-468 (Wash. 1981). Of these, far the most common are the two methods proposed by the parties herein, namely pro rata allocation based on time on the risk (RLI's position), and pro rata allocation based on some combinatoric of time on the risk and policy limits (all other parties' position). *See* 3-22 Appleman on Insurance § 22.03 (2012). Of the two common approaches, the majority of courts to address the issue have adopted the former, "time on the risk" approach. *See id.*

Although mindful of the necessity to consider all of the four statutory factors listed in Or. Rev. Stat. 465.480(4), I agree with the majority of courts to have addressed the issue that, as a matter of logic, policy limits bear on the question of allocating an insured's defense costs among multiple insurers only where the insurers' policies provide at least partially concurrent coverage. It is axiomatic that coverage limits do not bear on an insurer's obligation to undertake an insured's defense. The logical consequence is that defense costs should be allocated pro rata

Page 12 - FINDINGS AND RECOMMENDATION

according to policy limits only during, and for purposes of, periods of concurrent coverage by multiple insurers. In the absence of any such periods of concurrent coverage, as here, the "policy limits" factor of Section 480(4)(b) should be given a weight of zero, and it is appropriate to allocate the multiple consecutive insurers' proportion of the insured's defense costs proportionally according to time on the risk (the factor set forth in Section 480(4)(a)).

The foregoing conclusion does not obviate the necessity to consider the remaining statutory factors. As to the "appropriate type of coverage" factor, set forth in Section 480(4)(c), I reject RLI's argument that its policy provides a less appropriate type of coverage than do the policies of the other defendants. Although RLI correctly characterizes the policies of the other defendants as providing primary coverage and its own policy as intended to provide only umbrella-type coverage that is triggered only in the absence of other, primary coverage of the insured, it has been the law of this case since August 12, 2010, that RLI's coverage has "dropped down" to fill a gap in Northwest Pipe's other, primary coverage, and that RLI's duty to defend has been triggered. Under the circumstances, RLI's policy provides precisely the same "type" of coverage as do the policies of the other defendants. The factor set forth in Section 480(4)(c) therefore provides no grounds for modifying the "time on the risk" allocation dictated by consideration of the first two statutory factors.

As to the "time spent uninsured" factor, set forth in Section 480(4)(d), I reject RLI's argument that Northwest Pipe should properly be considered uninsured for purposes of the period between July 8, 1985, and February 19, 1986, for reasons related to those adduced above in discussion of the third statutory factor. It is the law of the case that Northwest Pipe was covered for purposes of the environmental claims against it in connection with the Portland Facility

Page 13 - FINDINGS AND RECOMMENDATION

matter by RLI's policy during that period. It would therefore be inappropriate to deem Northwest Pipe to have acted as its own insurer for purposes of that period of time. Nevertheless, it appears to be undisputed that Northwest Pipe had no coverage under policies issued by any defendant during the short period between June 14 and July 8, 1983, and the parties' evidentiary submissions do not clearly establish whether the Portland Facility claims allow the possibility that Northwest Pipe could incur liability arising out of occurrences that took place at any time subsequent to February 19, 1986.

Because the current evidentiary record does not permit definitive resolution of the questions whether under Section 480(5) Northwest Pipe should be deemed to have acted as its own insurer for one or more coverage periods implicated by the underlying claims against it and, if so, for what precise periods it should be so deemed -- and because there remain unresolved factual questions as to the precise amount of Northwest Pipe's attorney fees reasonably incurred to date -- I agree with Northwest Pipe and with RLI that the court may not properly issue an order specifying the dollar amount of RLI's share of Northwest Pipe's defense costs at this time. However, the Section 480(4)(d) factor applies only to the question whether some portion of an insured's defense costs are properly allocable to the insured itself, to the extent the insured may be deemed to have acted as its own insurer, and is without bearing on the *proportional allocation among insurers* of that portion of the insured's defense costs that are properly allocable to those insurers. The court may therefore properly issue an order at this time setting forth the appropriate proportional allocation among the ACE defendants, Wausau, and RLI of those of Northwest Pipe's defense costs properly allocable to the defendant insurers, and may properly defer resolution of issues raised by the Section 480(4)(d) factor until such time as the evidentiary

Page 14 - FINDINGS AND RECOMMENDATION

record permits determination of the precise amount of those costs.

Based on the foregoing analysis, I conclude that it is appropriate to allocate among the defendants those of Northwest Pipe's defense costs that are properly allocable to the defendants according to each defendant's time on the risk. Analysis of the parties' evidentiary submissions establishes that the defendant insurers were "on the risk" for a total of 47.85 months, and that all such coverage was consecutive rather than concurrent. Of those 47.85 months, the record establishes that the ACE defendants provided 16.5 months of consecutive coverage, Wausau provided 24 months of consecutive coverage, and RLI provided 7.35 months of consecutive coverage. The court should therefore grant the pending motions, and order that, of those of Northwest Pipe's defense costs that are properly allocable to the defendants, the ACE defendants are responsible for 34.48% of those costs, Wausau for 50.16%, and RLI for 15.36%.

## CONCLUSION

For the reasons set forth above, Wausau's motion (#120) for partial summary judgment, the ACE defendants' joinder (#125) in Wausau's motion, and Northwest Pipe's joinder (#132) in Wausau's motion should each be granted, and the court should order that, of those of Northwest Pipe's defense costs that are properly allocable to the defendants, the ACE defendants are responsible for 34.48% of those costs, Wausau for 50.16%, and RLI for 15.36%.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 19th day of March, 2012.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge