IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST PIPE COMPANY,

        Plaintiff,                            3:09-CV-1126-PK

v.                                       FINDINGS AND
                                       RECOMMENDATION

RLI INSURANCE COMPANY,

        Defendant.

———————————————

EMPLOYERS INSURANCE OF WAUSAU,

        Counter Claimant,

v.

NORTHWEST PIPE COMPANY,

        Counter Defendant

———————————————

RLI INSURANCE COMPANY,

       Third-Party Plaintiff,

v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, ACE FIRE
UNDERWRITERS INSURANCE
COMPANY,

       Third-Party Defendants.

PAPAK, Magistrate Judge:

Northwest Pipe Company ("Northwest Pipe") filed this declaratory judgment and breach of contract action in Multnomah County Circuit Court against RLI Insurance Company ("RLI") and Employers Insurance of Wausau ("Wausau") on July 14, 2009, seeking the court's declarations that Wausau and RLI are each obligated to undertake Northwest Pipe's defense in connection with superfund-related claims brought against it by the Environmental Protection Agency (the "EPA") and the Oregon Department of Environmental Quality (the "DEQ"), as well as damages for costs incurred in investigating and defending those claims. Wausau removed the action to this court on September 22, 2009, on diversity grounds. On September 29, 2009, Wausau filed a counterclaim against Northwest Pipe, seeking this court's declaration that Wausau has no duty to defend or obligation to indemnify Northwest Pipe in connection with the insurance policy between Wausau and Northwest Pipe that is the subject of Northwest Pipe's claims against Wausau, as well as this court's declaration that Wausau has no duty to defend and no obligation to indemnify Northwest Pipe in connection with two other insurance policies between Wausau

Page 2 - FINDINGS AND RECOMMENDATION

and Northwest Pipe, as to which Wausau is currently contributing to Northwest Pipe's defense.

On January 22, 2010, Northwest Pipe, Wausau, and RLI each moved for partial summary judgment as to the insurer parties' duty to defend in connection with the period from July 8, 1985, through July 8, 1986. As to that period, Wausau – which had undertaken Northwest Pipe's defense based on separate insurance policies providing coverage in connection with different time periods – had issued Northwest Pipe an insurance policy containing an "absolute" pollution exclusion it argued was applicable to exclude coverage for the EPA/DEQ claims against Northwest Pipe. As to the partially overlapping period from July 8, 1985, through February 19, 1986, RLI -- which had declined to undertake Northwest's defense altogether -- had issued Northwest Pipe a so-called "umbrella" liability insurance policy whose coverage provisions were triggered only in the event of a covered loss as to which no coverage existed under any insurance policy "underlying" the RLI policy. Northwest Pipe took the position that, necessarily, either Wausau or RLI owed Northwest Pipe coverage during that period, Wausau took the position that it owed no coverage under its policy by operation of the absolute pollution exclusion, and RLI took the position that coverage under its policy did not come into effect until all of Northwest Pipe's applicable coverage was exhausted. On April 27, 2010, I recommended that Wausau's motion and RLI's motion be granted, and that Northwest Pipe's motion be denied.

On August 12, 2010, Judge Brown adopted my recommendation in part, granting partial summary judgment in favor of Wasau, dismissing all of Northwest Pipe's claims against it, and granting judgment in Wasau's favor as to its counterclaim for declaratory judgment that Wausau has no duty to defend or obligation to indemnify Northwest Pipe in connection with the insurance policy between Wausau and Northwest Pipe that was the subject of Northwest Pipe's claims

Page 3 - FINDINGS AND RECOMMENDATION

against Wausau. However, Judge Brown otherwise declined to adopt my recommendations, granting partial summary judgment in favor of Northwest Pipe as to RLI's duty to defend, and denying RLI's motion. It has been the law of the case thereafter that RLI owes Northwest Pipe a duty to defend under RLI's umbrella policy.

Effective March 18, 2011, Wausau amended its pleading to state cross-claims against RLI, specifically for this court's declaration of Wausau's and RLI's "respective rights and obligations, if any, under each of their respective insurance policies issued to Northwest Pipe," including a declaration that "in the event that Northwest Pipe can establish the existence, terms, and conditions of any contract of insurance issued by Wausau, and in the event coverage is found to exist under any policy so established as issued by Wausau, that such coverage should be apportioned among Northwest Pipe and all defendants in a fair and equitable manner," and for equitable contribution of RLI's proportionate share of moneys already expended by Northwest Pipe's insurers other than RLI in connection with Northwest Pipe's defense. Effective April 15, 2011, RLI amended its pleading to state third-party claims against ACE Property and Casualty Insurance Company ("APCIC") and ACE Fire Underwriters Insurance Company ("AFUIC" and, collectively with APCIC, the "ACE defendants") for contribution of the ACE defendants' proportional share of Northwest Pipe's defense costs and to state a counterclaim for this court's declaration of all parties' respective rights under the parties' insurance contracts, including the ACE defendants.

On March 19, 2012, I analyzed Oregon's statutory provision governing allocation among insurers of moneys paid toward environmental claims, Or. Rev. Stat. 465(4)-(6), and concluded that where each insurer is responsible for a period of "time on the risk" that is wholly non-

Page 4 - FINDINGS AND RECOMMENDATION

overlapping with each other insurer's "time on the risk," it is appropriate to allocate responsibility for the payment proportionally among the insurers according to time on the risk alone, without weighting the resulting obligation based on the insurers' respective policy limits.  Accordingly, I recommended on the basis of the parties' evidentiary submissions that the court find that, of those of Northwest Pipe's defense costs that are properly allocable to the insurer parties hereto, the ACE defendants are responsible for 34.48% of those costs, Wausau for 50.16%, and RLI for 15.36%.  I expressly recommended, on the basis of the evidentiary record then before the court, that the court refrain from deciding what proportion, if any, of Northwest Pipe's defense costs were properly allocable to Northwest Pipe itself, and from assigning specific dollar amounts to any party's appropriate share of those costs.  In addition, I expressly noted that the parties' evidentiary submissions suggested that Northwest Pipe had no insurance coverage during the period between June 14, 1983, and July 8, 1983, a time period material to the EPA/DEQ investigation.

Northwest Pipe subsequently offered additional evidence not previously submitted to the court, tending to establish that it had insurance coverage provided by Aetna Fire Underwriters Insurance Company, the predecessor in interest of third-party defendant AFUIC, during the period from June 14, 1983, to July 8, 1983.

On June 13, 2012, Judge Brown declined to adopt my recommendations of March 19, 2012, concluding that Or. Rev. Stat. 465.480(4) requires that allocation among insurers be weighted by both time on the risk and by policy limit even in the absence of any concurrent coverage periods.  In light of this conclusion, and after taking into account the additional 23 days of insurance coverage during the period from June 14, 1983, to July 8, 1983, established by

Northwest Pipe's newly offered evidence, Judge Brown ruled that, of those of Northwest Pipe's

defense costs that are properly allocable to the insurer parties hereto, the ACE defendants are

responsible for 24.92% of those costs, Wausau for 31.81%, and RLI for 43.27%.

RLI having subsequently moved for partial summary judgment to allocate a proportion of

Northwest Pipe's defense costs to Northwest Pipe, on June 25, 2012, I recommended that RLI's

motion for such allocation be denied. In support of its motion, RLI made two arguments. First,

it argued that Northwest Pipe should as a matter of law be treated as its own insurer for purposes

of the period from July 8, 1985, through July 8, 1986. Second, it argued that under a provision

titled "Condition S" of its own umbrella policy issued to Northwest Pipe, due to the insured's

failure to maintain all "underlying" coverage in "full effect," coverage was only available under

the policy to the extent it would have been had such underlying coverage been maintained in full

effect, and that Condition S had been triggered when Wausau modified its underlying policy to

include an absolute pollution exclusion.

On June 25, 2012, I found that the evidence of record did not establish the

contemporaneous commercial availability of insurance lacking an absolute pollution exclusion

during the period from July 8, 1985, through July 8, 1986, and on that basis recommended

rejection of RLI's first argument. I expressly declined to address RLI's second argument,

however, on the grounds that it was effectively an argument for reconsideration of Judge Brown's

ruling of August 12, 2010, that "RLI has a duty to defend Plaintiff in this action under the terms

of its policy unless or until RLI establishes the property damage at issue was not 'caused by or

arising out of [an] occurrence' during the relevant policy period." I advised the parties that only

Judge Brown could appropriately modify her own ruling, as follows:

RLI argues primarily that Northwest Pipe should be considered an uninsured for purposes of Section 465.480 during the period from July 8, 1985, through February 19, 1986. **In effect, RLI's arguments constitute a request for reconsideration of Judge Brown's August 12, 2010, rulings** against it. I decline RLI's invitation to disturb Judge Brown's decision. **Until such time, if any, that Judge Brown should elect to modify her prior rulings**, it is the law of the case that RLI owes Northwest Pipe a duty to defend in connection with its policy providing coverage during the period from July 8, 1985, through February 19, 1986, and on that basis I recommend that RLI's motion be denied to the extent premised on the theory that Northwest Pipe was an uninsured during that period.

Notwithstanding the foregoing, on September 7, 2012, Judge Brown adopted my recommendation to reject RLI's argument that Northwest Pipe could properly be treated as its own insurer for the entire period of July 8, 1985, through July 8, 1986, but addressed RLI's second argument in favor of its motion as follows:

The Court REFERS to the Magistrate Judge RLI's contention that some portion of the cost of defense should be allocated to Plaintiff on the ground that Plaintiff's assent to an absolute pollution exclusion in Endorsement 8 to the Employers Insurance Company of Wausau insurance policy covering the period from July 8, 1985 to July 8, 1986, violated "Condition S" of RLI's policy of insurance. This issue is referred to the Magistrate Judge either (1) to explain the basis for choosing not to address this argument or (2) to address RLI's argument and, if necessary, to modify the Findings and Recommendation.

Now before the court are (i) the unresolved portion of RLI's motion (#148) for partial summary judgment as to the narrow issue of allocation of defense costs to Northwest Pipe referred to these chambers by and through Judge Brown's order (#183) dated September 7, 2012, (ii) Northwest Pipe's motion (#177) for partial summary judgment as to the narrow issue of allocation of defense costs to Northwest Pipe, and (iii) Wausau's motion (#191) for partial summary judgment as to its crossclaim against RLI for equitable contribution, by and through which Wausau seeks a declaration of the amount certain owed by RLI to its co-insurers, in which motion the ACE defendants have joined. I have considered the motions, oral argument on behalf

of the parties, and all of the pleadings and papers on file. For the reasons set forth below, I recommend that the court (i) deny RLI's motion (#148) for partial summary judgment in its entirety, (ii) reconsider its order (#62) dated August 12, 2010, (iii) grant on reconsideration RLI's motion (#28) for summary judgment as to its duty to defend, (iv) deny on reconsideration Northwest Pipe's motion (#32) for partial summary judgment in its entirety, (v) reconsider its order (#169) dated June 13, 2012, (vi) modify on reconsideration the allocation of Northwest Pipe's defense costs properly allocable to its insurers in the manner discussed below, (vii) deny Northwest Pipe's motion (#177) for partial summary judgment as moot with leave to refile if circumstances warrant; and (viii) deny Wausau's motion (#191) for partial summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v.*

*Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must

consider each motion separately to determine whether either party has met its burden with the

facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g.,*

*Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not

grant summary judgment where the court finds unresolved issues of material fact, even where the

parties allege the absence of any material disputed facts. *See id.*

## BACKGROUND[1]

### I.    Parties

Northwest Pipe Company (formerly known as Northwest Pipe & Casing Company) is an

Oregon corporation with its principal place of business in Vancouver, Washington. At all

material times beginning February 1, 1982, Northwest Pipe owned and operated a facility (the

"Portland Facility") near the Willamette River in North Portland, located at 12005 N. Burgard

Road.

Each of the ACE defendants is a Pennsylvania corporation with its principal place of

business in Pennsylvania. Each ACE defendant is in the business of providing liability

insurance. APCIC issued Northwest Pipe a liability insurance policy covering the period from

June 14, 1980, to June 14, 1982. AFUIC  issued Northwest Pipe a liability insurance policy

covering the period from June 14, 1982, through June 14, 1983. Each of the ACE defendants'

policies has a coverage limit of $100,000.

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of
the evidentiary record in light of the legal standard governing motions for summary judgment
under Federal Civil Procedure Rule 56.

Page 9 - FINDINGS AND RECOMMENDATION

Employers Insurance of Wausau is a Wisconsin corporation with its principal place of business in Wisconsin. Wausau is in the business of providing liability insurance. Wausau issued three insurance policies to Northwest Pipe, each with a $500,000 coverage limit, one covering the period from July 8, 1983, through July 8, 1984, one covering the period from July 8, 1984, through July 8, 1985, and one covering the period from July 8, 1985, through July 8, 1986. Wausau has undertaken to defend Northwest Pipe against the superfund claims in connection with the policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, but has not undertaken Northwest Pipe's defense in connection with the policy covering the period from July 8, 1985, through July 8, 1986.

RLI Insurance Company is an Illinois corporation with its principal place of business in Illinois. RLI is in the business of providing liability insurance. RLI issued Northwest Pipe a so-called "umbrella" liability insurance policy with a $1,000,000 coverage limit, covering the period from July 8, 1985, through February 19, 1986.

## II.    Policies

### A.    ACE Defendants' Policies

The ACE defendants' policies, covering the period from June 14, 1980, through July 8, 1983, contain a coverage exclusion for certain specified environmental damage, but the exclusion is expressly inapplicable to "sudden and accidental" discharge, dispersal, release, or escape of pollutants. The ACE defendants have undertaken to defend the actions against Northwest Pipe under both of their policies subject to a reservation of rights, and are currently contributing to Northwest Pipe's defense in the Superfund action.

**B.    Wausau's Policies**

Wausau's policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, contain a coverage exclusion for any damage caused by pollution *other* than "sudden and accidental" pollution.  That is, the policies cover damage caused by sudden and accidental release of pollutants, and do not cover damage caused by any other pollutants.  Wausau has undertaken to defend the actions against Northwest Pipe in connection with each of these two policies subject to a reservation of rights, and is currently defending Northwest Pipe in those actions under these policies.

By contrast, Wausau's policy covering the period from July 8, 1985, through July 8, 1986 (Wausau's "1985-1986 policy"), as amended, contains a so-called "absolute" pollution exclusion, excluding from coverage all damage caused by pollutants, applicable as follows:

(1)    to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a)    at or from premises owned, rented or occupied by the named insured;

    (b)    at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)    which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

    (d)    at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

        (i)    if the pollutants are brought on or to the site or location in connection with such operations; or

        (ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2)     to any loss, cost or expense arising out of any governmental direction or request
        that the named insured test for, monitor, clean up, remove, contain, treat, detoxify
        or neutralize pollutants.

        Pollutants means any solid, liquid, gaseous or thermal irritant or
        contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and
        waste. Waste includes materials to be recycled, reconditioned or reclaimed.

The absolute pollution exclusion was added to the 1985-1986 policy by Endorsement No. 8 on

August 6, 1985, approximately one month into the effective period of the policy. By its express

terms, Endorsement No. 8 was intended to apply retroactively to the entire effective period of the

policy. Wausau has not contributed to Northwest Pipe's defense under the 1985-1986 policy and,

under Judge Brown's order of August 12, 2010, is not required to.

**C.      RLI's Policy**

RLI's policy, covering the period from July 8, 1985, through February 19, 1986 (the "RLI

policy"), provides insurance coverage in the event of property damage, among other losses. The

policy contains a provision (the "underlying-insurance provision") expressly providing that RLI

must undertake Northwest Pipe's defense in the event of a covered loss as to which no coverage

exists under any insurance policy "underlying" the RLI policy:

        With respect to any occurrence not covered by the underlying policies listed in the
        Schedule of Underlying Insurance hereof or any other underlying insurance
        collectible by the Assured, but covered by the terms and conditions of this policy
        except for the amount of Retained Limit specified in the Declarations, the
        Company shall

        (a)     defend any suit against the Assured alleging such injury or
                destruction and seeking damages on account thereof, even if such
                suit is groundless, false or fraudulent. . . .

The Schedule of Underlying Insurance specifically lists Wausau's 1985-1986 policy as an

underlying policy.

Page 12 - FINDINGS AND RECOMMENDATION

The RLI policy contains a further provision (the "other-insurance provision") providing that coverage under the RLI policy does not arise until coverage under all other applicable policies is exhausted, other than coverage under policies expressly excess to the RLI policy:

> If other valid and collectible insurance with any other insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

The RLI policy contains a further provision (the "maintenance of underlying insurances" provision, referred to by the parties as "Condition S" of the RLI policy) providing that in the event Northwest Pipe failed to maintain the underlying Wausau 1985-1986 policy "in full effect," coverage would only be available under the RLI policy to the extent it would have been available had the Wausau 1985-1986 policy been maintained in full effect:

> It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurances" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect to accidents and/or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

The RLI policy does not define the term "full effect."

As of the present date, RLI has not contributed to Northwest Pipe's defense in the Superfund actions under the RLI policy or otherwise.

III.    **History of Coverage Dispute**

On November 19, 1999, the Oregon Department of Environmental Quality sent Northwest Pipe a letter indicating that the Portland Facility was a "high priority" location for

assessment and testing in connection with the investigation of the significant contamination of the Portland Harbor superfund site. On December 8, 2000, the Environmental Protection Agency sent Northwest Pipe a letter indicating that Northwest Pipe had been identified as a potentially responsible party in connection with the contamination of the Portland Harbor superfund site. As a responsible party, Northwest Pipe was required to conduct an investigation of the contamination at the Portland Facility and to defend itself against EPA and DEQ claims against it.

On January 16, 2002, Northwest Pipe tendered the defense of the EPA and DEQ claims to the ACE defendants, Wausau and RLI. As noted above, the ACE defendants undertook Northwest Pipe's defense in connection with both of its policies, and Wausau undertook Northwest Pipe's defense in connection with two of its three policies. However, Wausau declined to defend Northwest Pipe in connection with the 1985-1986 policy on the ground that coverage was excluded under the absolute pollution exclusion of that policy, and RLI declined to undertake Northwest Pipe's defense on the ground that its duty to defend was not triggered until Northwest Pipe had exhausted all other applicable insurance coverage.

On August 12, 2010, Judge Brown declared that Wausau has no duty to defend or indemnify Northwest Pipe in connection with the 1985-1986 policy. Judge Brown further declared that RLI owes Northwest Pipe a duty to defend under its purported umbrella policy.

According to the defendants' submissions, as of October 30, 2012, Wausau has contributed $2,030,573.86 towards Northwest Pipe's defense costs, and the ACE defendants have contributed $2,310,673.78. As noted above, RLI has not yet made any contribution toward Northwest Pipe's defense costs. According to Wausau's evidence, RLI has not identified any

specific defense cost line items to which it objects with particularity, although it has been

provided with all of the billing statements.

## ANALYSIS

I.  **Issue Referred to the Undersigned Judge By Judge Brown in Connection with RLI's Motion (#148) for Partial Summary Judgment**

As noted above, RLI offered two arguments in support of its motion for partial summary

judgment, by and through which it sought allocation of a percentage of Northwest Pipe's defense

costs to Northwest Pipe. First, it argued that Northwest Pipe was uninsured during the period

from July 8, 1985, through July 8, 1986, on the theory that (i) Wausau's policy covering that

period was inapplicable to the claims against Northwest Pipe by operation of that policy's

absolute pollution exclusion, and moreover that (ii) insurance that would have covered those

claims was commercially available to Northwest Pipe at that time, such that, for purposes of Or.

Rev. Stat. 465.480(5), Northwest Pipe could be treated as its own insurer for that period. I found

that, based on the evidentiary record then (and now) before the court, RLI had not established the

commercial availability of insurance that would have covered the loss at issue, and on that basis

recommended that RLI's motion be denied to the extent premised on that argument. Judge

Brown adopted that finding and recommendation.

Second, RLI argued that under "Condition S" of its umbrella policy, due to Northwest

Pipe's failure to maintain Wausau's 1985-1986 policy in "full effect" (that is, due to the

amendment of the policy by endorsement to add the absolute pollution exclusion to its terms),

RLI's duty to defend did not arise, in that Wausau's 1985-1986 policy would have provided

coverage (and Wausau would have undertaken Northwest Pipe's defense in connection with that

policy) but for the amendment to Wausau's policy following issuance of RLI's umbrella policy. I

Page 15 - FINDINGS AND RECOMMENDATION

expressly declined to address RLI's second argument on the grounds that it was effectively an

argument for reconsideration of Judge Brown's previous express ruling, dated August 12, 2010,

that "RLI has a duty to defend Plaintiff in this action under the terms of its policy unless or until

RLI establishes the property damage at issue was not 'caused by or arising out of [an] occurrence'

during the relevant policy period." Notwithstanding the foregoing, on September 7, 2012, Judge

Brown adopted my finding that RLI had failed to establish the commercial availability of

applicable insurance during the period from July 8, 1985, through July 8, 1986, and my

recommendation that RLI's motion be denied to the extent premised on the theory that Northwest

Pipe must as a matter of law be deemed to have been its own insured for that period, but referred

consideration of RLI's argument premised on Condition S back to me.

Considered in its immediate procedural context, and in light of the court's finding

discussed above regarding RLI's failure to establish the commercial availability of applicable

insurance during the period from July 8, 1985, through July 8, 1986, RLI's Condition S argument

provides no grounds for grant of RLI's motion for partial summary judgment as to allocation of

defense costs to Northwest Pipe. Assuming *arguendo* that by operation of Condition S RLI's

duty to defend did not arise, the contemporaneous commercial availability of applicable

insurance remains a *sine qua non* of allocation of an environmental insured's defense costs to the

environmental insured, *see* Or. Rev. Stat. 465.480(1)(b), 480(5), and the court's finding that RLI

has not established such commercial availability forecloses the possibility that RLI's motion

could be granted on either of the two arguments offered in its support. In consequence, RLI's

motion (#148) should be denied in its entirety.

Consideration of the merits of RLI's Condition S argument pursuant to Judge Brown's

Page 16 - FINDINGS AND RECOMMENDATION

direction is not, however, thereby rendered moot.  As suggested above, if the argument is correct in its premise regarding the operation of Condition S – and I conclude that it is – then it gives rise to good grounds for reconsideration and reversal of the court's order (#62) of August 12, 2010, denying RLI's motion (#28) for summary judgment as to its duty to defend and granting Northwest Pipe's motion (#32) for partial summary judgment as to RLI's duty to defend.

Condition S is triggered under circumstances where Northwest Pipe fails to maintain Wausau's 1985-1986 policy in "full effect."  The policy does not formally define the phrase "maintained in full effect," but by specifying that any failure to maintain the underlying policy in full effect "except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect to accidents and/or occurrences occurring during the period of th[e RLI] policy" triggers Condition S, the policy strongly suggests that the phrase is intended to mean precisely what is suggested by its plain language, namely that Northwest Pipe was required to maintain the underlying policy without any abrogation or reduction of the coverage or coverage limits of the underlying policy (except as specified), without regard to whether such abrogation or reduction was substantial or *de minimis*.  Support for this interpretation is to be found in the consequences that obtain in the event that Condition S was triggered:  the RLI policy is not thereby nullified, but rather RLI's "liability" thereunder is limited to what it would have been had such abrogation or reduction of the underlying policy not occurred.  Thus, a minor or *de minimis* modification of the underlying policy would not have any disproportionate impact on Northwest Pipe's coverage under the RLI policy; to the contrary, Condition S so interpreted is precisely tailored to ensure that Northwest Pipe is entitled, during the entirety of the effective period of the RLI policy, to precisely that coverage it contracted to receive (presumably at a rate

reflecting RLI's status as Northwest Pipe's excess insurer) as of the date the RLI policy issued.

It appears clear, especially in light of the fact that Wausau has at all material times undertaken Northwest Pipe's defense under Wausau's policies covering the period from July 8, 1983, through July 8, 1984, and the period from July 8, 1984, through July 8, 1985, which lack the so-called "absolute" pollution exclusion that was added to Wausau's 1985-1986 policy by endorsement after the date the RLI policy issued, that but for the amendment by endorsement of the underlying policy to add the absolute pollution exclusion, Northwest Pipe's losses in connection with the EPA/DEQ investigation and claims would be covered under the underlying policy. It follows that, under Condition S, RLI does not owe Northwest Pipe a duty to defend under the RLI policy for the period from July 8, 1085, through February 19, 1986.

At oral argument, Northwest Pipe argued that the foregoing analysis is necessarily invalid because it fails to take into account the undisputed fact that Endorsement No. 8, which added the absolute pollution exclusion to Wausau's 1985-1986 policy on August 6, 1985, expressly provides that it is to be applied retroactively to July 8, 1985, the first day of the effective period of the RLI policy. Thus, Northwest Pipe argued, Wausau's 1985-1986 policy was maintained "in full effect" notwithstanding its subsequent amendment by Endorsement No. 8, because given the intended retroactive application of the amendment, the underlying policy was at all material times constructively subject to the absolute pollution exclusion, including as of the date the RLI policy issued.

Under Oregon law, it is reasonably clear that, notwithstanding a "presumption against retroactive application of [amendments to] insurance policies," *Capitol Specialty Ins. Corp. v. Chan & Lui, Inc.*, 248 Or. App. 674, 679 (2012), the parties to an insurance contract are free both

Page 18 - FINDINGS AND RECOMMENDATION

to change the terms and conditions of the insurance policy by mutual agreement and to specify the date on which such changes take effect, *see id.* at 680. In consequence, where insurer and insured mutually and unambiguously agree to retroactive amendment of the terms and conditions of their insurance policy, the policy will, as a matter of law, be enforceable by each party against the other as though the amendment had been agreed to at the time the policy originally issued. *See id.* However, I am aware of no provision of Oregon law (and the parties have cited none) pursuant to which the parties to an insurance contract may by mutual agreement bind a *third party* to the retroactive application of an amendment to the parties' insurance policy. Indeed, such a rule of law would invite considerable mischief in the context of the excess- and/or umbrella-insurance industry, creating both an opportunity and an incentive for insureds and primary insurers to collude to the unjust detriment of secondary insurers. Under Northwest Pipe's proposed interpretation, Wausau and Northwest Pipe could mutually have agreed to a retroactive amendment of the 1985-1986 policy that would have precluded coverage for any occurrence, effectively transforming the RLI policy into a primary insurance policy with extremely high coverage limits without requiring Northwest Pipe to pay the substantially higher premiums for such coverage that would have obtained in the primary insurance market.

In interpreting insurance policies, it is the task of the court under Oregon law to ascertain the intent of the parties as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or. 765, 771 (1985). The parties' intentions must be determined through analysis of the provisions of the contract. *See Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992); *see also* Or. Rev. Stat. § 742.016. If the contract's provisions are defined within the contract, the contractual definitions are applied. *See*

*Gonzales v. Farmers Ins. Co.*, 345 Or. 382, 387 (2008).  In the absence of any contractual definition, the courts must look first to the plain meaning of the terms used in the contractual provisions, *see id.*, and then to the policy context within which the provision appears, *see Hoffman*, 313 Or. at 470.  If following such analysis a provision has only one plausible interpretation, that interpretation is applied, and only if a provision is susceptible to two or more reasonable interpretations following such analysis will the ambiguity be resolved against the insurer. *See Gonzales*, 345 Or. at 387.  Here, the RLI policy is silent as to the interpretation of the term "maintained in full effect" in connection with retroactive amendment of underlying insurance.  However, both the plain meaning of the terms employed (as discussed above) and the policy context (an umbrella insurance policy issued expressly to provide insurance in excess of the underlying insurance policy and, presumably, priced accordingly) strongly suggest both that Northwest Pipe's interpretation is implausible and that an ordinary purchaser of insurance would not so have understood the provisions of Condition S.  An ordinary purchaser of insurance could only reasonably have interpreted the term "maintained in full effect," considered in connection with Wausau's 1985-1986 policy presence on the attached "Schedule of Underlying Insurances," to mean that, under Condition S, RLI's obligations as Northwest Pipe's insurer would be determined by reference to the coverage provided under Wausau's 1985-1986 policy as ascertainable from the underlying policy's language as it existed as of the date the RLI policy issued.  In consequence, I reject the argument that Northwest Pipe and Wausau could modify the availability of coverage under the RLI policy by mutually agreeing[2] to retroactive amendment of

---

[2] I assume *arguendo* that Northwest Pipe and Wausau mutually agreed to Endorsement No. 8.  In fact, the evidentiary record is silent as to whether Northwest Pipe expressly consented to the amendment.

Wausau's 1985-1986 policy.

For the foregoing reasons, I recommend reconsideration of the court's order (#62) dated August 12, 2010, and that on reconsideration the court grant RLI's motion (#28) for summary judgment as to its duty to defend and deny Northwest Pipe's motion (#32) for partial summary judgment in its entirety.

I note that on June 13, 2012, Judge Brown ruled that of those of Northwest Pipe's defense costs that are properly allocable to the insurer parties hereto, the ACE defendants are responsible for 24.92% of those costs, Wausau for 31.81%, and RLI for 43.27%. In light of the foregoing recommendation, I further recommend that those allocations be modified such that the ACE defendants shall be responsible for 43.93% of those costs, and Wausau for 56.07%.

## II.    Northwest Pipe's Motion (#177) for Partial Summary Judgment

By and through its motion for partial summary judgment now before the court, Northwest Pipe seeks a ruling that no proportion of its defense costs incurred in connection with the EPA/DEQ investigation and claims against it can properly be allocated to it under Or. Rev. Stat. 465.480(5). I note that no insurer party hereto other than RLI has ever sought such allocation. In light of my finding that, by Operation of Condition S of the RLI policy, RLI does not owe Northwest Pipe a duty to defend, I conclude that Northwest Pipe's motion is moot. I therefore recommend that the court deny Northwest Pipe's motion with leave to refile in the event circumstances warrant.

## III.    Wausau's Motion (#191) for Partial Summary Judgment

By and through its motion (in which the ACE defendants join), Wausau seeks (i) an order compelling RLI to pay its allocated share of the defense costs already paid by Wausau and the

ACE defendants on Northwest Pipe's behalf as of October 30, 2012, (ii) prejudgment interest on

those amounts, and (iii) a declaration of RLI's duty to continue paying Northwest Pipe's defense

costs on an ongoing basis at its allocated rate.  In light of my finding, discussed above, that RLI

does not owe Northwest Pipe a duty to defend in connection with the EPA/DEQ investigation

and claims against it, I conclude that Wausau and the ACE defendants cannot be entitled as a

matter of law to any of the relief requested.  I therefore recommend that the court deny Wausau's

motion in its entirety.

## CONCLUSION

For the reasons set forth above, (i) RLI's motion (#148) for partial summary judgment

should be denied in its entirety, (ii) the court should reconsider its order (#62) dated August 12,

2010, (iii) RLI's motion (#28) for summary judgment as to its duty to defend should be granted

on reconsideration, (iv) Northwest Pipe's motion (#32) for partial summary judgment should be

denied on reconsideration, (v) the court should reconsider its order (#169) dated June 13, 2012,

(vi) the court should modify on reconsideration the allocation of Northwest Pipe's defense costs

properly allocable to its insurers in the manner discussed above, (vii) Northwest Pipe's motion

(#177) for partial summary judgment should be denied as moot with leave to refile if

circumstances warrant, and (viii) Wausau's motion (#191) for partial summary judgment should

be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 12th day of April, 2013.

Honorable Paul Papak
United States Magistrate Judge