IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST PIPE COMPANY, fka                    3:09-CV-01126-BR
NORTHWEST PIPE & CASING COMPANY,
an Oregon corporation,                         OPINION AND ORDER

        Plaintiff,

v.

RLI INSURANCE COMPANY, an
Illinois corporation, and
EMPLOYERS INSURANCE COMPANY
OF WAUSAU, a Wisconsin
corporation,

        Defendants.

---

EMPLOYERS INSURANCE COMPANY
OF WAUSAU, a Wisconsin
corporation,

        Counter-Claimant,

v.

NORTHWEST PIPE COMPANY, fka
NORTHWEST PIPE & CASING COMPANY,
an Oregon corporation,

        Counter-Defendant.

---

1 - OPINION AND ORDER

RLI INSURANCE COMPANY, an
Illinois corporation,

       Third-Party Plaintiff,

v.

ACE FIRE UNDERWRITERS INSURANCE
COMPANY, a Pennsylvania company,
and ACE PROPERTY AND CASUALTY
INSURANCE COMPANY, a Pennsylvania
company,

       Third-Party Defendants.

MARGARET E. SCHROEDER
MICHAEL B. MERCHANT
Black Helterline
1900 Fox Tower
805 S.W. Broadway
Portland, OR 97205
(503) 224-5560

     Attorneys for Plaintiff
     and Counter-Defendant
     Northwest Pipe Company

CHRISTOPHER W. THOMPKINS
Betts Patterson & Mines PS
701 Pike St, Suite 1400
Seattle, WA 98101
(206) 292-9988

MICHAEL D. PROUGH
Morison & Prough, LLP
2540 Camino Diablo
Suite 100
Walnut Creek, CA 94597
(925) 937-9990

**BRUCE C. HAMLIN**
Martin Bischoff Templeton
Langslet & Hoffman
888 S.W. Fifth Avenue
Suite 900
Portland, OR 97204
(503) 382-4204

> Attorneys for Defendant,
> Counter-Defendant, Counter-
> Claimant, Third-Party Plaintiff,
> Cross-Claimant, and Cross-
> Defendant RLI Insurance Company

**BRYAN M. BARBER**
Barber Law Group
525 University Avenue
Suite 600
Palo Alto, CA 94301-1921
(415) 273-2930

**DARREN C. BEATTY**
**WILLIAM G. EARLE**
Davis Rothwell Earle & Xochihua, PC
111 S.W. 5th Ave.
Suite 2700
Portland, OR 97204-3650
(503) 222-4422

> Attorneys for Defendant,
> Counter-Claimant, Third-Party
> Defendant, Cross-Claimant, and
> Cross-Defendant Employers
> Insurance Company of Wausau

**R. LIND STAPLEY**
Soha & Lang, P.S.
1325 Fourth Avenue
Suite 2000
Seattle, WA 98101
(206) 624-1800

**RICHARD A. LEE**
Bodyfelt Mount, LLP
707 S.W. Washington Street
Suite 1100
Portland, OR 97205
503-243-1022

> Attorneys for Third-Party
> Defendants, Third-Party
> Plaintiffs, and Counter-Claimants
> Ace Fire Underwriters Insurance
> Company, Ace Property and
> Casualty Insurance Company

**BROWN, Judge.**

This matter comes before the Court on Defendant Employers Insurance Company of Wausau's Request (#261) for Judicial Notice and Wausau's Motion (#258) for Partial Summary Judgment on the Issue of Exhaustion of Policy Limits.  For the reasons that follow, the Court **GRANTS** Wausau's Request (#261) for Judicial Notice and **DENIES** Wausau's Motion (#258) for Partial Summary Judgment.

<u>BACKGROUND</u>

**I.   Pertinent Procedural Background**

On November 12, 2013, Wausau filed its Answer to Northwest Pipe's First Amended Complaint in which it also asserts Counterclaims for declaratory relief against Northwest Pipe on the basis that Wausau has exhausted the aggregate property-damage limits of the policies at issue in this matter in connection with

environmental claims that are the subject of this action.   Wausau previously filed its Motion (#258) for Partial Summary Judgment on the same exhaustion issue October 10, 2013.   After Northwest Pipe responded with its own Cross-Motion (#268) and briefing, the Court heard oral argument on Wausau's Motion on January 24, 2014, denied Northwest Pipe's Motion (#268) with leave to renew if necessary and directed Wausau and Northwest Pipe to file supplemental memoranda in further support of their positions as to the exhaustion issue.   The Court heard oral argument a second time on Wausau's Motion on February 25, 2014, and the Court directed Wausau and Northwest Pipe to file additional supplemental memoranda.

The Court took Wausau's Motion under advisement on March 18, 2014.

## II.   Factual Background

The following facts are undisputed unless otherwise noted.

### A.   The Policies

Wausau issued the following liability insurance policies (the policies)[1] to Northwest Pipe & Casing, now known as Northwest Pipe:

(1) Policy No. 2324-00-043510 for the period July 8,

---

[1]   Wausau also issued a third policy No. 2326-00-043510 for the period July 8, 1985, to July 8, 1986, that contains an absolute pollution exclusion and which the Court ruled does not provide coverage for the environmental claims at issue in this case.   Orders (# 62, 70).

1983, to July 8, 1984;

(2) Policy No. 2325-00-043510 for the period July 8,

1984, to July 8, 1985;

The basic insuring agreement in the Wausau policies

provides:

> The company will pay on behalf of the insured *all sums which the insured shall become legally obligated to pay as damages because of*
>
> > Coverage A, bodily injury or
> > Coverage B, *property damage*
>
> *to which this insurance applies*, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but *the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.*

Emphasis added.

The limit of liability in each of the Wausau policies for

property-damage claims is $100,000 for each occurrence subject to

an aggregate limit of $100,000.

The policies also require: "The insured shall cooperate

with the company and, upon the company's request, assist in

making settlements, in the conduct of suits and in enforcing any

right of contribution or indemnity against any person or

organization who may be liable to the insured because of injury

or damage with respect to which insurance is afforded under this policy . . . . *The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.*"  Emphasis added.

The Wausau policies contain an "Additional Insured" endorsement that names Schnitzer Investment as an insured with respect to "liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured . . . ."  The "Schedule of Designated Premises" lists "12005 N. Burgard, Portland, OR."

**B.    The Claims**

On November 19, 1999, the Oregon Department of Environmental Quality (DEQ) sent a letter requesting Northwest Pipe to perform a preliminary assessment with sampling in accordance with the Environmental Cleanup Law, Oregon Revised Statutes § 465.200 *et seq.*

In a letter dated December 8, 2000, the United States Environmental Protection Agency (EPA) informed Northwest Pipe that the EPA had identified Northwest Pipe as a potentially responsible party in connection with the release or threatened release of hazardous substances, pollutants, or contaminants at the Portland Harbor Superfund Site.  Schnitzer Investment, an Additional Insured under the policies, also was named as a

potentially responsible party in connection with the Portland Harbor Superfund Site.

In a January 16, 2002, letter Northwest Pipe notified Nationwide, the company that administers the policies, about the environmental claims involving the Portland Harbor Superfund Site and tendered those claims to Nationwide Indemnity[2] for defense and indemnity under the policies.[3]

In a February 18, 2002, letter Wausau agreed to defend Northwest Pipe under the 1983-84 and 1984-85 policies subject to a reservation of rights, but Wausau denied coverage under its 1985-86 policy based on the absolute pollution exclusion in that policy.  In that letter Wausau, among other things, notified Northwest Pipe that the policies did not "provide coverage for property damage to property owned or occupied or rented to the insured . . . ."  Joint Stip. Facts, Ex. D at 3.

On December 30, 2004, Northwest Pipe and the Oregon DEQ entered into a Voluntary Agreement for Remedial Investigation and Source Control Measures.  Pursuant to that agreement Northwest Pipe has performed Remedial Investigation and Source Control Measures.

---

[2]  "Effective January 1, 1999, Nationwide, pursuant to its de-affiliation with Wausau, assumed administrative responsibility for handling claims made under Wausau policies with effective dates prior to January 1, 1986."  Moore Decl. at ¶ 2.

[3]  The parties collectively refer to Wausau and Nationwide as "Wausau" for purposes of the exhaustion analysis.

### C.    The Blue Water Group Litigation and Interim RI/FS Settlement[4]

Northwest Pipe was one of a number of potentially responsible parties at the Portland Harbor Superfund Site that was commonly known as the Blue Water Group.  In February 2007 Northwest Pipe, Schnitzer Investment, and certain members of the Blue Water Group entered into an Interim RI/FS Settlement Agreement with another group of potentially responsible parties known as the Lower Willamette Group, which had filed a lawsuit demanding that members of the Blue Water Group pay a portion of the RI/FS expenses at the Portland Harbor Superfund Site (the BWG Litigation).  As part of the Interim RI/FS Settlement Agreement, Northwest Pipe paid $175,000 to the Lower Willamette Group in exchange for dismissal of the BWG Ligation.

### D.    Wausau's Payments

It is undisputed that as of June 30, 2013, Wausau had paid $2,148,186.30 in defense costs on behalf of Northwest Pipe in connection with the environmental claims DEQ and EPA asserted.

In addition, Wausau paid a total of $254,248.04 between 2009 and 2012 in response to certain invoices Northwest Pipe submitted

---

[4]  RI/FS stands for "Remedial Investigation/Feasibility Study."  RI/FS is a methodology for characterizing the nature and extent of risks posed by uncontrolled hazardous waste sites and for evaluating potential remedial options. U.S. Envtl. Prot. Agency, *Guidance for Conducting Remedial Investigations and Feasibility Studies Under CERCLA, Interim Final,* OSWER Directive 9355.3-01, EPA/540/G-89/004, 1-3 (Oct. 1988).

to Wausau.  Although Wausau classified $84,235.41 of these
invoice payments as indemnity coverage under its policies.
Northwest Pipe disputes that characterization.

In March 2012 representatives of Northwest Pipe and Wausau
met to discuss the environmental claims, and Wausau requested
Northwest Pipe provide copies of invoices for all site-related
environmental expenditures.  On September 26, 2012, Northwest
Pipe's attorney sent Wausau a letter and a disc containing copies
of invoices together with a spreadsheet prepared by Northwest
Pipe's counsel summarizing Northwest Pipe's site-related
environmental expenditures.[5]  The Northwest Pipe documents
confirmed that Northwest Pipe paid $175,000 to the Lower
Willamette Group as part of the 2007 RI/FS Settlement and also
paid $26,655 and $27,049.04 to a company named Bravo for its
"removal of hot spot" at the site in accordance with the Interim
Remedial Action Work Plan for the site.  Although Northwest Pipe
did not demand or request Wausau to reimburse it for the Bravo
invoices, Northwest Pipe reserved its right to do so.

In a letter dated July 3, 2013, Wausau informed Northwest
Pipe of Wausau's contention that certain expenses Northwest Pipe
had incurred fell within the indemnity coverage of the policies
and, when those expenses were added to other payments for which

---

[5]  The parties did not provide the spreadsheet as part of
the record in this Motion.

Wausau claims indemnity credit, the property-damage limits of the policies are substantially exceeded.

Wausau also informed Northwest Pipe that it would issue a check for the remaining balance of Wausau's $200,000 aggregate policy limits and Wausau asserted that this payment would exhaust Wausau's indemnity coverage for these environmental claims and terminate Wausau's defense obligation. Wausau stated it would reimburse Northwest Pipe for Wausau's share for reasonable and necessary defense costs incurred through July 3, 2013, but Wausau would not make any defense payments thereafter. Wausau also sent this letter to Northwest Pipe's other insurers to inform them of the putative exhaustion of the Wausau policies.

On July 17, 2013, Wausau sent a check to Northwest Pipe in the amount of $85,236.59 to pay the indemnity limits that Wausau alleged, but Northwest Pipe refused to accept the check and returned it to Wausau.

**E.    Costs at Issue**

Wausau contends it made or tendered payment for the following costs that constitute "judgments" or "settlements" or the functional equivalent thereof under the policies and that in combination exhaust the $200,000 indemnity limits of the policies:

> \*    $49,583.04 to CH2M Hill.
>
> \*    $34,651.37 as oversight costs to the DEQ.

      \*     $53,704 to Bravo for "backfill," "excavation," and

           "removal of hot spot."

      \*     $175,000 for Northwest Pipe's payment to the Lower

           Willamette Group as part of the Interim RI/FS

           Settlement Agreement.

      \*     $33,334 to Schnitzer for a portion of Schnitzer's

           payment to the Lower Willamette Group as part of

           the Interim RI/FS Settlement Agreement.[6]

According to Northwest Pipe, however, none of these payments
qualifies to reduce the indemnity limits under the policies.

## STANDARDS

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United
States*, No. 09-36109, 2011 WL 723101, at *8 (9th Cir. Mar. 3,
2011). *See also* Fed. R. Civ. P. 56(a). The moving party must
show the absence of a dispute as to a material fact. *Rivera v.
Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In
response to a properly supported motion for summary judgment, the

---

    [6] Although Wausau also contends it made a $2,195 indemnity
payment for a prior claim that is not at issue in this case,
Northwest Pipe concedes that payment was properly considered an
indemnity payment and reduces Wausau's indemnity obligation
accordingly. The Court concludes, therefore, that it need not
address that $2,195 payment.

nonmoving party must go beyond the pleadings and show there is a
genuine dispute as to a material fact for trial. *Id.* "This
burden is not a light one . . . . The non-moving party must do
more than show there is some 'metaphysical doubt' as to the
material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627
F.3d 376, 387 (9th Cir. 2010)(citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all
reasonable inferences in favor of the nonmoving party. *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues." *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts
Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598
(9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine
dispute as to a material fact exists "will not preclude the grant
of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No.
2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20,
2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1987)). *See also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389

13- OPINION AND ORDER

(9th Cir. 1990).  When the nonmoving party's claims are factually

implausible, that party must "come forward with more persuasive

evidence than otherwise would be necessary."  *LVRC Holdings LLC*

*v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge*

*Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense

determines whether a fact is material.  *Miller v. Glenn Miller*

*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the

resolution of a factual dispute would not affect the outcome of

the claim, the court may grant summary judgment.  *Id.*

## WAUSAU'S REQUEST (#261) FOR JUDICIAL NOTICE

Wausau requests the Court take judicial notice pursuant to

Federal Rule of Evidence 201 of "the Form 10-K for the fiscal

year ended December 31, 2012, filed by [NW Pipe] in the United

States Securities and Exchange Commission [(SEC)]," a portion of

which Wausau attached as Exhibit A to its Request.  Although

Northwest Pipe does not oppose Wausau's Request for Judicial

Notice, the Court notes Northwest Pipe contends the SEC filing

does not support Wausau's Motion (# 258) for Summary Judgment.

Pursuant to Federal Rule of Evidence 201(b)(2) a court may

take judicial notice of a fact "not subject to reasonable dispute

because it . . . can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned."  "Courts

14- OPINION AND ORDER

routinely take judicial notice of such things as public SEC filings." *City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.,* 963 F. Supp. 2d 1092, 1107 (E.D. Wash. 2013)(citations omitted).  The Court, therefore, concludes Exhibit A is a public filing of which the Court may take judicial notice.

Accordingly, the Court **GRANTS** Wausau's Motion (#261) for Judicial Notice.

**WAUSAU'S MOTION (#258) FOR PARTIAL
SUMMARY JUDGMENT ON THE ISSUE OF
EXHAUSTION OF POLICY LIMITS**

**I.    Summary of the Parties' Arguments**

Wausau moves the Court to grant summary judgment in Wausau's favor on its Counterclaim against Northwest Pipe that the $200,000 indemnity limits of the policies has been exhausted. Specifically, Wausau "requests a declaration that as of July 17, 2013, when Wausau sent its indemnity check to Northwest Pipe, Wausau exhausted the property damage limits of its 1983-84 and 1984-85 policies and therefore has no duty to defend or indemnity Northwest Pipe after that date.  Wausau also requests that the Court dismiss the claims against Wausau alleged in Northwest Pipe's First Amended Complaint."  Wausau's Mem. in Support of Mot. for Partial Summ. J. at 20.

According to Northwest Pipe, however, Wausau cannot exhaust its indemnity limits by reimbursing Northwest Pipe for payments

15- OPINION AND ORDER

Northwest Pipe made unless and until Northwest Pipe specifically requests Wausau to make such payment or reimbursement even if Northwest Pipe has reserved the right to request reimbursement in the future.  Northwest Pipe also contends the payments Wausau credits as indemnity were either not covered by the policies or were defense costs and, therefore, cannot be credited as indemnity payments.

Wausau, in turn, contends the policies give Wausau the right to settle and to pay claims.

## II.  Indemnity Coverage for Environmental Claims

As noted, Wausau's policies provide coverage to Northwest Pipe for "all sums which [Northwest Pipe] shall become legally obligated to pay as damages because of . . . property damage." The policies also provide Wausau "shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Oregon Revised Statute § 465.480(7) sets out the following rebuttable presumptions for categorizing expenditures under insurance policies that provide coverage for environmental claims:

> (a) There is a rebuttable presumption that the costs of preliminary assessments, remedial investigations, risk assessments or other necessary investigation, as those terms are defined by rule by the Department of Environmental Quality, are defense costs payable by the insurer, subject to the provisions of the applicable

general liability insurance policy or policies.

    (b) There is a rebuttable presumption that payment of the costs of removal actions or feasibility studies, as those terms are defined by rule by the Department of Environmental Quality, are indemnity costs and reduce the insurer's applicable limit of liability on the insurer's indemnity obligations, subject to the provisions of the applicable general liability insurance policy or policies.

As the court observed in *Siltronic Corp. v. Employers Insurance Company of Wausau*, No. 3:11-cv-1483-ST, 2014 WL 901161, at *3 (D. Or. Mar. 7, 2014) (*Siltronic II*):

    A "remedial investigation" is a process undertaken to determine the nature and extent of contamination, including sampling, monitoring, and gathering data, to determine if remedial action might be necessary. OAR 340-122-0080(1). It may include "characterization of hazardous substances, characterization of the facility, performance of baseline health and ecological risk assessments, and collection and evaluation of information relevant to the identification of hot spots of contamination." OAR 340-122-0080(2). If a remedial action is necessary, a "feasibility study" is then undertaken to "develop and evaluate a range of remedial action alternatives acceptable to [DEQ]." OAR 340-122-0085(2). A "remedial action" or "removal" is a type of clean-up that prevents or minimizes contamination at a site. ORS 465.200(23).

    In other jurisdictions court have concluded government-mandated cleanup costs (which are presumed to be indemnity costs under Oregon law) are the functional equivalent of "judgments or settlements" under policies that provide environmental coverage like the Wausau policies at issue here and, therefore, count toward indemnity policy limits. For example, in *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, the district court held:

17- OPINION AND ORDER

"Cleanup costs mandated by the government are property damages that [an insured] is legally obligated to pay, and they are the functional equivalent of 'judgments or settlements'" and exhaust indemnity policy limits.  2009 WL 3074618, at *9 (N.D. Tex. Mar. 30, 2009).  Similarly, in *Weyerhaeuser Company v. Commercial Union Insurance Company* the court held "the payment of funds for costs of complying with [a consent decree entered with respect to environmental cleanup site for which an insured is a responsible party] is the functional equivalent of a settlement, and the underlying insurer's duty to defend ceases once its policy has been exhausted by payments made for this purpose."  142 Wash.2d 654, 692 (2000).  In *County of Santa Clara v. U.S. Fidelity & Guarantee Company* the court held a remedial action order requiring the insured to remediate mercury contamination was the "functional equivalent of a final adjudication of liability sufficient to exhaust primary indemnity limits."  868 F. Supp. 274, 279 (N.D. Cal. 1994).  The *Santa Clara* court noted, however, the "insurer cannot extinguish its defense obligation simply by tendering its indemnity limits to the insured and walking away from the fray — a tempting maneuver when it appears that defense costs will exceed indemnity limits."  *Id.* at 277.

In *Pacific Employers Insurance Company v. Servco Pacific, Inc.*, the court considered whether an insurer's settlement with the insured "purportedly resolving all coverage questions

18- OPINION AND ORDER

[between the insured and insurer] arising from all environmental liability" for current and future environmental claims exhausted the primary policy and triggered an excess insurer's duties.   273 F. Supp. 2d 1149 (D.Haw. 2003).   The court concluded the settlement exhausted the policy limits on the ground that the "judgments or settlements" language in the primary policy "appears to state a commonsense proposition that if [the primary insurer] pays its limits by judgment or settlement — *i.e.*, if the underlying action is gone — then [the primary insurer's] duties have ended.   It might also refer to settlements, like the [one here], with the insured."   Id. at 1154.

The court in *Siltronic Corp. v. Employers Ins. Co. of Wausau* (*Siltronic I*) summarized the leading cases on this issue as follows:

> The common thread running throughout these cases is that an insurer may not exhaust its indemnity limits until a settlement or judgment of some kind imposes a legal obligation on the insured to a third party. In *Weyerhaeuser*, the insured incurred indemnity costs by complying with a consent decree.  In *Pacific Employers*, the insurer and the insured had entered into a settlement agreement to resolve the coverage issues. And in *County of Santa Clara*, indemnity costs would occur once the [Remedial Acton Order's] remediation plan was approved.

921 F. Supp. 2d 1099, 1108-09 (D. Or. 2013)(citations omitted).

## III. Disputed Costs

### A.    Payments to Bravo, CH2M Hill, and DEQ

Wausau asserts a total of $137,938 of payments to Bravo,
CH2M Hill, and DEQ are indemnity payments that reduce its policy
limits because these payments constitute "remedial action costs"
and are "presumed" to be indemnity payments under Oregon Revised
Statute § 465.480(7).  Wausau also contends the payments to Bravo
are indemnity payments because the work was performed "under
Voluntary Agreement with DEQ."

In support of these assertions, Wausau relies on the
Declaration (#260) of Harold R. Moore, III, a Specialty
Consultant for Nationwide who is responsible for handling
Northwest Pipe's environmental claims under the policies.
Attached to Moore's Declaration as Exhibit A is a chart that
summarizes payments that Wausau made to CH2M Hill and DEQ that
Wausau contends count against Wausau's indemnity limits.  This
chart lists certain CH2M Hill and DEQ invoices by number and
date, the amount of the invoice, the amount paid by Wausau, and
parts of the payments that Wausau allocated as defense or
indemnity costs.  Moore states CH2M Hill "performed remedial
measures such as source control and removal of contaminated soil"
to comply with Northwest Pipe's Voluntary Agreement for Remedial
Infestation and Source Control Measures.  Moore Decl. at ¶ 6.
According to the descriptions of work listed on CH2M Hill's

20- OPINION AND ORDER

invoices, Moore identified the activities that were "purely investigation and which involved removal or remediation activities that would be considered as part of Wausau's indemnity obligation under the Oregon statute." Moore Decl. at ¶ 6.

Moore also states he "analyzed the DEQ invoices to ascertain whether the 'oversight' costs related to investigation or remediation activities." *Id.* According to Moore, Wausau "allocated only a portion of the DEQ oversight costs to indemnity even though all of the DEQ oversight costs could be properly characterized as indemnity expenses because they represent part of Northwest Pipe's legal liability, not defense costs." *Id.* The Court notes Moore does not explain the method that he used to allocate the DEQ oversight costs and, in any event, Moore's contention that all DEQ oversight costs should be considered indemnity costs is contrary to the presumption set forth in Oregon Revised Statute § 465.480(7). *See Siltronic II*, 2014 WL 901161, at *7.

In any event, Northwest Pipe asserts there is an unresolved question as to whether the payments to CH2M Hill, DEQ, and Bravo are even covered under the policies because the work related to these costs was performed on Northwest Pipe's property and the policies exclude coverage for the remediation of contamination on the insured's own property. *See Baumann v. N. Pac. Ins. Co.*, 152 Or. App. 181, 189 (1998). *See also* Decl. (#273) of Stephanie

Heldt-Sheller at ¶¶ 10, 12, 15 (stating part of Northwest Pipe's involvement in the Portland Harbor Upland Remedial Investigation and Source Control program includes work on its own property to remove contamination and to make improvements to ensure contamination does not impact the Willamette River).  The Court notes Wausau did not address this argument in its briefing and it appears Wausau simply presumes without analysis that these costs are covered under the policies.  Before the Court could determine on summary judgment that such payments count against the indemnity limits, however, it must first be able to conclude that such payments are, in fact, covered under the policies.  *See Northwest Pump & Equip. Co. v. American States Ins. Co.,* 144 Or. App. 222, 227 (1996)("[T]he duty to indemnify is established by proof of actual facts demonstrating a right to coverage.").  Because Wausau failed to establish coverage for these costs in the first instance, it follows that Wausau has failed to show it is entitled to summary judgment as a matter of fact and law as to these costs.

Nevertheless, even if one assumes the CH2M Hill, Bravo, and DEQ costs were covered under the policies, the evidence is still insufficient on this record to allow the Court to grant Wausau's Motion.  In *Siltronic II* the court was presented with a similar issue and asked to determine whether certain costs related to the insured's environmental claim were properly categorized as

defense or indemnity costs.  In making such determinations, the court relied on detailed evidence and testimony provided by the parties as to the specific work for which the disputed invoices issued and the way that work related to the types of costs outlined in Oregon Revised Statute § 465.480(7)(a) and (b).  Here Wausau has not provided any such evidence; *i.e.*, Wausau has not explained the specific work that was performed by CH2M Hill, Bravo, and DEQ or the bases for Wausau's conclusions that certain tasks were to be treated as defense costs or indemnity payments for purposes of analyzing the exhaustion issue.  In short, Moore's conclusory statements that these costs were properly allocated in accordance with Oregon law is wholly insufficient to support summary judgment in Wausau's favor on the exhaustion issue.

Finally, as Northwest Pipe emphasizes, Wausau actually took a position in *Siltronic II* that is directly contrary to its position in this case, but Wausau has not offered any explanation as to its apparently contradictory positions involving virtually identical issues.  In *Siltronic II* Wausau contended that another insurer's motion for summary judgment should "be denied because the subject of the motion — whether certain environmental response costs paid by Wausau were properly characterized as defense or indemnity expenses — is inherently a fact-based determination, including expert analysis." *Siltronic II*, No. 11-

cv-01493-ST, Wausau's Resp. (#113) in Opp. to Mot. for Partial
Summ. J. at 2.  The Court agrees with Wausau's position as
asserted in *Siltronic II.*

For these reasons, the Court concludes on this record that
genuine disputes of material fact and unresolved questions of
insurance law preclude summary judgment on Wausau's Motion as to
the CH2M Hill, Bravo, and DEQ costs.

**B.    Northwest Pipe's $175,000 Payment for Interim RI/FS
        Settlement Agreement**

Wausau contends it has the "right" to reimburse Northwest
Pipe for the $175,000 payment Northwest Pipe made as part of the
Interim RI/FS Settlement Agreement and the "right" to treat such
payment as an indemnity payment under its policies.

As noted, Northwest Pipe was one of many parties that
entered into the February 2007 Interim RI/FS Settlement
Agreement, which resolved the BWG Litigation.  As part of the
agreement, the settling parties, including Northwest Pipe, agreed
to "contribute certain funds to the payment of RI/FS Expenses"
including certain work directed by EPA.  Joint Stip. Facts, Ex. F
at 3.  At the time of the settlement negotiations, Northwest Pipe
requested "funding" from Wausau to negotiate a settlement of up
to $200,000.  Moore Decl. at ¶ 12; Ex. C at 2.  Although Wausau
agreed to reimburse Northwest Pipe for the settlement amount
after Northwest Pipe entered into the agreement, Wausau asserted
the reimbursement would constitute an indemnity payment under the

24- OPINION AND ORDER

polices.  Moore Decl. at ¶ 12.  The record is silent, however, as to any communications the parties may have had about this issue after Wausau stated its position in 2007.  There is not any evidence suggesting Northwest Pipe agreed with Wausau at the time and, in any event, it is undisputed that Wausau did not attempt to reimburse Northwest Pipe for this $175,000 payment until July 17, 2013, more than six years after Northwest Pipe entered into the Interim RI/FS Settlement.

Northwest Pipe argues the $175,000 settlement payment does not constitute a "judgment" or a "settlement" under the policies because the Interim RI/FS Settlement did not resolve any claims that triggered coverage under the policies.  Although, Wausau agreed to defend the EPA and DEQ claims for Northwest Pipe's asserted liability at the Portland Harbor Superfund Site, Northwest Pipe emphasizes there is not any evidence that Wausau ever agreed to indemnify Northwest Pipe in the BWG Litigation and, accordingly, settlement of the BWG Litigation is not a "judgment" or "settlement" under the policies.

As noted, the court in *Pacific Employers* concluded that the same types of "judgment or settlement" language contained in the Wausau policies "appears to state a commonsense proposition that if [the primary insurer] pays its limits by judgment or settlement — *i.e., if the underlying action is gone — then [the primary insurer's] duties have ended.*"  273 F. Supp. 2d at 1154

(emphasis added).  Here Wausau has not presented any evidence
that the BWG Litigation was a claim for which Wausau accepted
indemnity coverage nor does Wausau offer any basis for the Court
to conclude that the settlement resolved all of the EPA and DEQ
claims for which Wausau accepted tender and as to which this
coverage litigation was brought.  In fact, the Settlement
Agreement specifically provides it was intended to be an "interim
RI/FS settlement" and did not "act as a release of liability by
any Party or of any Party with respect to the Portland Harbor
Superfund Site."  Id., Ex. F at 8.

Furthermore, Wausau's own conduct contradicts its after-the-
fact assertion that it was entitled to settle the BWG Litigation
because the policies provide that Wausau may make a "settlement
of any claim or suit as it deems expedient."  Although Wausau may
have had the right under the policies to settle the BWG
Litigation claim "expediently" in February 2007 if that
litigation triggered coverage under the policies, Wausau
certainly did not act expediently as to that issue.  It is
undisputed that Northwest Pipe rather than Wausau negotiated the
agreement and made the settlement payment in 2007 and, as noted,
it was not until more than six years later that Wausau asserted
this current exhaustion argument.

Accordingly, the Court concludes on this record that Wausau
has failed to establish the Interim RI/FS Settlement Agreement

was a "judgment or settlement" for purposes of determining exhaustion of Wausau's $200,000 indemnity limits.

### C.    Schnitzer Settlement Payment

Wausau also contends the $33,334 payment it made to Schnitzer Steel should be considered an indemnity payment under the policies for purposes of exhaustion because this reimbursed Schnitzer Investment as an additional-named insured under the policies for the settlement payment Schnitzer Investment made to settle the BWG Litigation.

Similar to the analysis as to Northwest Pipe's $175,000 payment, Wausau has not shown the BWG Litigation was a claim it accepted on behalf of Schnitzer and has not established the RI/FS Settlement finally resolved any of the claims by way of "judgment" or "settlement" against Schnitzer Investment.  Thus, the Court similarly concludes Wausau has not established a right to summary judgment as to the $33,334 Schnitzer payment.

Accordingly, Wausau has failed to establish on this record that Schnitzer's settlement payment as part of the Interim RI/FS Settlement Agreement was a "judgment or settlement" for purposes of determining exhaustion of Wausau's policies.

For all of these reasons, the Court concludes Wausau has failed to establish as a matter of undisputed fact that it is entitled to a declaration of exhaustion as a matter of law.

## IV.  Northwest Pipe's Procedural Arguments

The Court notes Northwest Pipe asserted a number of procedural arguments in opposition to Wausau's Motion.  In light of the Court's ruling that Wausau is not entitled to summary judgment on its Motion, however, the Court concludes it need not address Northwest Pipe's additional arguments.

## CONCLUSION

For these reasons, the Court **GRANTS** Wausau's Request (#261) for Judicial Notice and **DENIES** Wausau's Motion (#258) for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this _10th_ day of April, 2014.

_____
ANNA J. BROWN
United States District Judge